**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 22-122-DLB**

**KELLY HICKS**                                                              **PLAINTIFF**

**v.**                  **MEMORANDUM OPINION AND ORDER**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**            **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \*

**I.**        **INTRODUCTION**

This matter is before the Court on Plaintiff Kelly Hicks' Motion for Summary Judgment (Doc. # 14), filed pursuant to 42 U.S.C § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Social Security Administration. Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, has filed a Cross-Motion for Summary Judgment (Doc. # 18). Additionally, the Commissioner has filed a Motion for Leave to File Excess Pages (Doc. # 17) and a Motion to Strike an erroneously filed document. (Doc. # 21). The Court, having reviewed the administrative record and the parties' motions, and for the reasons stated herein, **affirms** the Commissioner's decision. Accordingly, Mr. Hicks' Motion for Summary Judgment (Doc. # 14) is **denied**, the Commissioner's Motion for Summary Judgment (Doc. # 18) is **granted**, the Commissioner's Motion for Leave to File Excess Pages (Doc. # 17) is **granted**, and the Commissioner's Motion to Strike (Doc. # 21) is **granted**.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

Kelly Hicks is a 55-year-old resident of East Bernstadt, Kentucky. (Tr. 57). Mr. Hicks filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits with the Social Security Administration in August 2019 and June 2020, respectively. (Tr. 197, 212). In his applications, Mr. Hicks alleged disability beginning on December 15, 2014, and continuing through the date of application, based on back pain associated with degenerative disc disease. (*E.g.*, Tr. 229). Mr. Hicks' application for DIB and his application for SSI were both initially denied in December 2019 (Tr. 65, 73), and they were denied again on reconsideration in April 2020. (Tr. 85, 95). Mr. Hicks requested a hearing before an Administrative Law Judge ("ALJ") shortly thereafter (Tr. 145), and a telephonic hearing was held before ALJ Joyce Francis in October 2020. (Tr. 30). ALJ Francis issued an unfavorable decision to Mr. Hicks in February 2021, finding that he was not disabled as defined by the Social Security Act. (Tr. 13). Mr. Hicks then appealed the ALJ's decision to the SSA Appeals Council, which denied his appeal in May 2022. (Tr. 1). That denial precipitated the filing of this action, by which Mr. Hicks seeks the Court's review. (*See* Doc. # 1).

## III. ANALYSIS

### A. Standard of Review

Judicial review of the Social Security Commissioner's decision is restricted to determining whether the decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a

2

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Hum. Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

### B.    The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520).

The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, the ALJ determined at Step One that Mr. Hicks had not engaged in substantial gainful activity since the alleged onset date of his disability in December 2014. (Tr. 19). At Step Two, the ALJ found that Mr. Hicks' obesity, lumbar disc degeneration, and history of right tibia fractures were severe impairments. (*Id.*). The ALJ concluded at Step Three that Mr. Hicks' severe impairments did not meet or medically equal the severity of one of the listed impairments in the Social Security Act, so the analysis proceeded to Step Four. (Tr. 19-20). Before completing the fourth step, the ALJ determined that Mr. Hicks had the residual functional capacity ("RFC") "to perform medium work . . . except he can frequently climb ramps and stairs," in addition to "frequently climb ladders, ropes, or scaffolds . . . frequently stoop, kneel, crouch, and crawl, [and] frequently be exposed to vibration." (Tr. 20). At Step Four, the ALJ found that Mr. Hicks was capable of performing his past relevant work as a tractor trailer truck driver, a drag line operator, and a blaster, as the work "does not require the performance of work-related activities precluded by the claimant's [RFC]." (Tr. 22). Lastly, at Step Five, the ALJ concluded that given Mr. Hicks' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. (Tr. 23). In addition to Mr. Hicks' past relevant work, the ALJ noted that a vocational expert testified that Mr. Hicks could work as a dump truck driver, automobile

detailer, and front end loader.  (Tr. 23-24).  Because those jobs, in addition to Mr. Hicks' previous jobs, could be performed within Mr. Hicks' RFC, the ALJ concluded that he was not disabled within the definitions of the Social Security Act.  (Tr. 24).

On appeal to this Court, Mr. Hicks argues that the ALJ's finding is not supported by substantial evidence because (1) she failed to properly evaluate the opinions of his treating physician (Doc. # 15 at 5), (2) she did not properly develop the record as required by regulations by failing to re-contact a physical consultative examiner (*id*. at 8), and (3) the SSA Commissioner's appointment is unconstitutional. (*id.* at 10).  After reviewing the filings made by Mr. Hicks and the Commissioner, the Court finds that Mr. Hicks' arguments do not warrant reversal of the Commissioner's decision, and the decision is thus affirmed for the foregoing reasons.

**C.    Review**

As previously stated, "substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip*, 25 F.3d at 286.  The Court cannot weigh the evidence or re-litigate the case, but only examine the sufficiency of the evidence, even if the Court may have decided the case in a different manner.  *See Her*, 203 F.3d at 389-90.  If the ALJ's decision is supported by substantial evidence, the Court must affirm the decision.  *Cutlip*, 25 F.3d at 286.  The Court will evaluate each of Mr. Hicks' arguments in turn under this standard.

> **1.    *The ALJ's evaluation of Dr. Maxey's opinions is supported by substantial evidence.***

With respect to the ALJ's finding at Step Four, that Mr. Hicks has the RFC to perform certain types of work, Mr. Hicks argues that the ALJ's decision is not supported

5

by substantial evidence because the ALJ assigned little weight to the opinions of Dr. Maxey, Mr. Hicks' treating physician. (Doc. # 15 at 9). Unfortunately for Mr. Hicks, his argument is unavailing.

The Social Security regulations provide that an ALJ must determine a claimant's RFC, which "is defined as the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 405 (6th Cir. 2018) (internal quotations omitted). The regulations require that an ALJ assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). With specific respect to medical evidence, an ALJ must evaluate the persuasiveness of medical opinions considering certain factors, including supportability, consistency, relationship with the claimant, specialization, and other factors, including familiarity with the other evidence involved in a claim. 20 C.F.R. § 404.1520c(e)(1)-(5). Of these factors, the regulations provide that supportability and consistency are the "most important," and they further require that an ALJ explain how he or she considered supportability and consistency in assigning weight to a medical opinion, while explanation of the other factors is optional. *Id.* at (b)(2). Supportability is defined as "the objective medical evidence and supporting explanations provided by a medical source [] to support his or her medical opinion(s)," *id.* at (c)(1), and consistency is defined as how "consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* at (c)(2).

Here, at Step Four, the ALJ concluded that Mr. Hicks' RFC would allow him to "perform medium work . . . except he can frequently climb ramps and stairs[,]" in addition

to being able to "frequently climb ladders, ropes, or scaffolds," "frequently stoop, kneel, crouch, and crawl," and "frequently be exposed to vibration." (Tr. 20). In explaining how she reached that conclusion, the ALJ evaluated the persuasiveness each of the medical opinions contained in the record. (Tr. 22). With respect to state agency medical consultants Dr. Farmer and Dr. Reed, the ALJ found their opinions "to be persuasive." (*Id.*). She found the opinions of a physical consultative examiner, Ms. Raikes, "to be persuasive, but less persuasive than the opinions of the State Agency medical consultants due to its vagueness." (*Id.*). Lastly, the ALJ found the opinions of Dr. Jackie Maxey, Mr. Hicks' treating physician, "to be unpersuasive." (*Id.*). Mr. Hicks now takes issue with the ALJ's finding with respect to Dr. Maxey because Dr. Maxey provided an opinion that Mr. Hicks' physical abilities were much more limited than Mr. Hicks' RFC as determined by the ALJ. (*Id.*). As retold by the ALJ:

> Dr. Maxey opined that the claimant would be off task 20% of the time, could lift and carry up to 20 pounds occasionally, could sit for three hours in an eight-hour day, could stand and/or walk for three hours in an eight-hour day, would require the option to sit/stand at will, would need the option to lie down or recline during the work day, would need to elevate his legs while seated, would need an assistive device to ambulate effectively at times, and could never perform most postural activities.

(*Id.*). In finding Dr. Maxey's opinions to be unpersuasive, the ALJ considered supportability and consistency, writing that Dr. Maxey's "opinion [was] not *supported by* or *consistent with* the objective medical evidence . . . including Dr. Maxey's own treatment records." (*Id.*) (emphasis added). The ALJ then pointed out the evidence supporting her finding.

First, the ALJ noted that Dr. Maxey's own treatment records did not support the conclusions he provided with respect to Mr. Hicks' abilities, which speaks to

7

supportability. (*Id*.). More specifically, she noted that "[p]hysical exams indicated some tenderness and an occasionally antalgic gait and [Mr. Hicks] did not require an assistive device for ambulation. Strength remained 5/5 throughout the record. Range of motion was occasionally reduced due to pain." (*Id.*). Second, she cited "the objective medical evidence discussed [throughout her opinion]," which includes the more persuasive findings of state agency medical consultants and the physical consultative examiner, in addition to the objective evidence underlying each of those findings (*Id.*). The ALJ concluded by stating that Dr. Maxey "filled out a checkbox form and did not offer any supporting evidence of rationale for the extreme limitations [he] opined." (*Id*.).

In short, the portions of the administrative record cited by the ALJ confirms that her credibility determination with respect to Dr. Maxey's medical opinion is supported by substantial evidence. The Court's analysis stops there, as the Court cannot reweigh the evidence and make its own credibility determinations. *Her*, 203 F.3d at 389-90; *see also Kreilach v. Comm'r of Soc. Sec.*, 621 F. Supp. 3d 836, 847-48 (N.D. Ohio 2022) (finding substantial evidence supporting a credibility determination where ALJ provided reasons for her determination).

Otherwise, to the extent that Mr. Hicks argues the ALJ did not correctly apply the factors within 20 C.F.R. § 404.1520c (Doc. # 15 at 11), that argument is also unpersuasive. As previously noted, an ALJ is only required to consider consistency and supportability when evaluating the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c(b)(2). The only scenario in which additional factors are required to be considered is when "two or more medical opinions about the same issue are both equally well-supported and consistent with the record." *Id.* at (b)(3). Otherwise, consideration of

8

factors beyond consistency and supportability are optional. *Id*. Here, the ALJ did not determine that Dr. Maxey's opinion was "equally well-supported and consistent with the record," and so she was not required to apply those additional factors.

The Sixth Circuit has recently stated that a plaintiff's attempt to argue an incorrect application of the § 1520c factors is nothing more than a "veiled attempt to have [the court] reweigh the evidence." *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, at *2 2022 WL 17348838 (6th Cir. Dec. 1, 2022) (citing *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341-43 (6th Cir. 2008). Unfortunately for Mr. Hicks, this Court also sees through such an attempt, and the Court must reject his argument, as it cannot reweigh the evidence. In evaluating Dr. Maxey's opinion by addressing supportability and consistency, the ALJ made the persuasiveness determination pursuant to proper legal standards. *Colvin*, 475 F.3d at 729-30.

### 2. The ALJ did not err in failing to re-contact the physical consultative examiner.

Second, Mr. Hicks argues that the ALJ "failed to fully and fairly develop the record" in not "recontact[ing] the consultative examiner, despite finding the examiner's limitations to be 'vague.'" (Doc. # 15 at 12) (citing Tr. 22). The physical consultative examiner, Ms. Raikes, provided a medical opinion that "the claimant might have difficulty with prolonged walking, siting, and standing, with squatting, bending, and reaching overhead, and with lifting, carrying, pushing, or pulling heavy weight." (Tr. 22). The ALJ found the opinion "to be persuasive, but less persuasive than the opinions of the state agency medical consultants due to its vagueness." (*Id.*). She further noted that the examiner's opinions "are supported by and consistent with the objective medical evidence discussed above, which shows mild to moderate changes on imaging studies, unremarkable physical

9

exams except for some tenderness and an occasionally antalgic gait, no specialist treatment, and good control of symptoms with medication." (*Id.*).

Mr. Hicks now argues that because the ALJ described the examiner's as "vague," she "had a duty to 'contact the medical source who performed the consultative examination, give an explanation of her evidentiary needs, and ask that the medical source furnish the information or prepare a revised report.'" (Doc. # 15 at 13) (quoting 20 C.F.R. § 404.1519p(b)). Mr. Hicks is incorrect, and his second argument does not warrant reversal of the ALJ's decision.

The Social Security regulations are clear that an ALJ is only required to contact a consultative examiner to "furnish [] missing information or prepare a revised report" when "the report is inadequate or incomplete." 20 C.F.R. § 404.1519p(b). The regulations also provide that a "complete consultative examination is one which involves all the elements of a standard examination in the applicable medical specialty," and notably, "the absence of a medical opinion in a consultative examination report will not make the report incomplete." *Id.* at § 404.1519n(c).

Here, the ALJ noted that the consultative report was "vague" in evaluating its supportability and consistency for purposes of determining Mr. Hicks' RFC in light of the multiple medical opinions in the record. (Tr. 22). Importantly, the ALJ did not note that the report was incomplete or inadequate – only less persuasive than other medical opinions in the record – and in the absence of the report being incomplete or inadequate, the ALJ was not required to contact the consultative examiner. *Cf. Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 122 (6th Cir. 2016) ("Because [the consultative examiner's]

10

report was not inadequate or incomplete, the ALJ did not have to contact [him] for clarification.").

Here, Mr. Hicks is conflating the ALJ's persuasiveness classification with a finding that the report was incomplete. In short, even a vague report can nonetheless be complete, and Mr. Hicks has not argued that the report was incomplete. In fact, he argues that the report should have been assigned greater weight, as the consultative examiner's opinions are more favorable to his position. (Doc. # 15 at 10) (arguing that the examiner's "opinions are consistent with the opinions of Dr. Maxey and are consistent with and supported by the medial evidence of record[.]") But as previously stated with respect to Dr. Maxey's opinions, the Court cannot reweigh the evidence. *Her*, 203 F.3d at 389-90. Mr. Hicks' second argument accordingly does not warrant reversal.

### 3. The ALJ's authority to decide Mr. Hicks' claim for benefits is not constitutionally defective.

Lastly, Mr. Hicks has argued that "remand is required based upon the government's violations of Mr. Hicks' constitutional rights [because] . . . it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and [who] can only be removed from his position for cause." (Doc. # 15 at 14) (citing *Seila Law, LLC v. CFPB*, 140 S. Ct. 2183 (2020)). The agency head that Mr. Hicks references is Andrew Saul, who served as Commissioner of the Social Security Administration from June 17, 2019 until July 9, 2021, when President Biden appointed Dr. Kilolo Kijakazi as Acting Commissioner. *E.g.*, *Ellison v. Kijakazi*, No. 2:21-CV-13-DCP, 2022 WL 4388375, at *5 (E.D. Tenn. Sept. 22, 2022).

In recent months, Social Security litigants across the nation have attempted to use similar arguments in disability appeals, asserting that Mr. Saul's purportedly defective

11

appointment entitles them to receive a new hearing. (Doc. # 18 at 10-11 n.2) (collecting cases); *see, e.g.*, *Ellison*, 2022 WL 4388375 at *5. The Court is aware of no instance in which such an argument has been successful. Here, the parties agree that the Social Security Act "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Doc. # 18 at 6) (citing Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542 (July 8, 2021). But according to the Commissioner, "without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination." (*Id.*). The Court is inclined to agree.

First, as the Commissioner points out, the ALJ who decided Mr. Hicks' case was appointed in July 2018 by former Acting Commissioner Nancy Berryhill, and the purported constitutional issues arise from an allegedly defective authority of former Commissioner Saul, not former Acting Commissioner Berryhill. (*Id.* at 8 n.1). But even if the deciding ALJ had been appointed by former Commissioner Saul, Mr. Hicks' argument here still fails. As this Court has recently stated in addressing an identical argument by an SSA claimant:

> The recent United States Supreme Court decision in *Collins v. Yellin*, 141 S. Ct. 1761 (2021), established that a plaintiff seeking relief on this basis must present evidence of actual harm. Simply saying the ALJ was wrong is not enough. "[T]he unlawfulness of the removal provision does not strip the [Commissioner] of the power to undertake the other responsibilities of his office." *Collins*, 141 S. Ct. at 1788 n.3. As Justice Thomas's concurring opinion clarifies, Plaintiff must do more than point to a conflict between 42 U.S.C. § 902(a)(3) and the Constitution; she must show some action on the part of Saul that was unlawful and harmful to her. *See id.* at 1790-91 (Thomas, J., concurring). Yet, she has not argued or established how any action of Saul made it more or less likely that her applications would be denied. As such, remand is not warranted.

12

*Wybo v. Kijakazi*, No. 0:20-CV-518-HRW, 2021 WL 6052423, at *4 (E.D. Ky. Dec. 21, 2021) (alterations in original).  The same is true here.  Mr. Hicks has not argued or established how any actions of former Commissioner Saul made it more or less likely that his applications for benefits would be denied.

At best, Mr. Hicks makes a cursory statement that he "has sustained a sufficient injury from an executive act that allegedly exceeds the official's authority," and that "as such, a presumptively faulty legal standard was used to adjudicate this claim at the administrative level." (Doc. # 15 at 15).  Unfortunately for Mr. Hicks, the appointment of Mr. Saul did not change the legal standards that were used to decide his disability claim.  In fact, the ALJ who decided his case was not appointed by Mr. Saul – but even if she had been, that appointment alone would not have created "a presumptively faulty legal standard." (*Id.*);  *Wybo*, 2021 WL 6052423, at *4 (citing *Collins*, 141 S. Ct. at 1788 n.3).  Accordingly, Mr. Hicks' third argument does not warrant reversal.

    **4.**    ***Additional Miscellaneous Motions***

As previously noted, the Commissioner has also filed a Motion for Leave to File Excess Pages (Doc. # 17) and a Motion to Strike an erroneously filed document. (Doc. # 21).  Both of these motions were received without objection from Mr. Hicks, and they will accordingly be granted.

**IV.**    **CONCLUSION**

In close, the Court again notes that in reviewing the decision of an ALJ, the Court cannot re-litigate a case, and it cannot re-weigh the evidence.  *Her*, 203 F.3d at 389-90.  Even when the Court may have decided a case differently, the Court must affirm the ALJ's decision if it is supported by substantial evidence.  *Cutlip*, 25 F.3d at 286.  In this case,

for the reasons stated herein, the ALJ's decision is supported by an ample amount of substantial evidence, and thus it will be affirmed.

Accordingly, **IT IS ORDERED** that:

(1) Mr. Hicks' Motion for Summary Judgment (Doc. # 14) is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment (Doc. # 18) is **GRANTED**;

(3) The Commissioner's Motion for Leave to File Excess Pages (Doc. # 17) is **GRANTED**;

(4) The Commissioner's Motion to Strike (Doc. # 21) is **GRANTED**, and Doc. #20 is **STRICKEN** from the docket;

(5) This matter is **DISMISSED** and **STRICKEN** from the Court's active docket; and;

(6) A separate Judgment shall be entered herewith.

This 21st day of June, 2023.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\SocialSecurity\MOOs\London\6-22-122 Hicks MOO.docx